UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RICKY COLMENERO,

            Petitioner,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

            Respondent.

No. 1:16-cv-00649-GSA

**ORDER REVERSING ADMINISTRATIVE
DECISION AND REMANDING CASE FOR
FURTHER PROCEEDINGS UNDER
SENTENCE 4 OF 42 U.S.C. § 405(g)**

I.      <u>Introduction</u>

      Plaintiff Ricky Colmenero ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

Disability Insurance Benefits ("DIB") and Supplementary Security Income ("SSI") pursuant to

Titles II and XVI of the Social Security Act. The matter is currently before the Court on the

parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin,

United States Magistrate Judge.[1] (*See* Docs. 32 and 33). Having reviewed the record as a whole,

the Court finds that, if properly examined, new medical reports submitted to the Administrative

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 12 and 19.

1  Council had the capacity to change the outcome of the Administrative Law Judge's decision.

2  Accordingly, the Court reverses the determination of the Acting Commissioner of Social Security

3  the remands the case for further proceedings consistent with this opinion.

4  **II.    Facts and Prior Proceedings[2]**

5  **A.    Procedural Background**

6  On August 17, 2012, Plaintiff protectively filed applications for disability insurance and

7  supplemental security income. AR 24. He alleged disability beginning August 2, 2012. AR 24.

8  The Commissioner denied the applications initially on December 17, 2012, and upon

9  reconsideration on October 10, 2013. AR 24. On November 22, 2013, Plaintiff filed a timely

10  request for a hearing before an Administrative Law Judge. AR 24.

11  Administrative Law Judge Cynthia Floyd presided over an administrative hearing on

12  March 12, 2015. AR 24. Plaintiff, represented by counsel, appeared and testified. AR 24. An

13  impartial vocational expert, Thomas Dachelet (the "VE") also appeared and testified. AR 24.

14  On April 28, 2015, the ALJ denied Plaintiff's applications. AR 24-33. On November 23,

15  2015, Plaintiff submitted new evidence (included in the record at AR 536-47) and requested

16  expedited handling of the appeal. AR 17. The Appeals Council denied review on December 3

17  and 15, 2015. AR 5-9; AR 10-16. On May 10, 2016, Plaintiff filed a timely complaint seeking

18  this Court's review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Doc. 1.

19  **B.    Relevant Facts**

20  **1.    Plaintiff's Testimony**

21  Plaintiff (born July 3, 1963) completed high school and served in the Navy as a hull

22  technician and welder. AR 42; 45. Plaintiff drove trucks, operated heavy equipment, and held a

23  number of construction jobs, such as laying pipe and installing windows. *See* AR 46-51; 224-

24  262; 277-285. Because he could not pass the medical examination following his lymphoma

25  ///

26

27  [2] The Court has reviewed the administrative record as a whole. References to the administrative record will be
designated "AR," followed by the appropriate page number(s).

28  2

diagnosis, the State of California revoked Plaintiff's Class A driver's license. AR 44. He had not yet applied for a Class C driver's license and relied on his wife for transportation. AR 44.

Even before doctors diagnosed lymphoma, Plaintiff had frequent infections that caused him to miss work. AR 51. He experienced vomiting, diarrhea, problems with equilibrium and balance, and general weakness. AR 54. After radiation therapy ended in 2013, these side effects continued, and Plaintiff began to experience fevers and chills, particularly at night. AR 54. He took medication to relieve nausea. AR 59. Plaintiff experienced good days and bad days, and typically experienced three bad days in a week. AR 56. His daily activity varied according to his condition that day. AR 55-56.

Plaintiff's physicians continued to monitor him for new masses indicative of recurrent lymphoma. AR 52. Just before the hearing date, physicians had detected three new masses, located in Plaintiff's underarm and abdomen. AR 52. They intended to initiate treatment if the masses grew. AR 52-53.

Plaintiff had also been diagnosed with thrombocytopenia (low platelet count), which resulted in severe nose bleeds several times each month. AR 61-62. He would typically bleed from 15 to 30 minutes. AR 62. The blood loss exacerbated Plaintiff's fatigue. AR 61.

## 2. Medical History

During a bout of "stomach flu"[3] and fever in or about April 2012, Plaintiff noticed painful swelling on the left side of his neck. AR 322. Over the next four-to-six weeks the lump varied in size, firmness, and tenderness. AR 322. In late May 2012, Plaintiff experienced dry throat and coughing. AR 322. On June 4, 2012, Plaintiff went to the emergency department of Memorial Medical Center in Modesto, California, complaining of neck pain, nausea, and cough. AR 322. Medical personnel observed a moderately tender soft tissue mass, measuring 2.5 by 2.5 inches, located on Plaintiff's left anterior neck, and an enlarged, non-tender, right supraclavicular lymph

---

[3] Plaintiff often referred to his frequent, but intermittent, bouts of gastric and intestinal distress as the "flu." It is unclear whether Plaintiff's digestive problems resulted from viral infections (flu) or whether they were the result of his lymphoma, thrombocytopenia, or another disorder. *See also* AR 536-542 (documenting further investigation of Plaintiff's chronic digestive problems beginning in April 2015).

node. AR 323-24. A complete blood count indicated that Plaintiff's platelet and lymphocyte counts were abnormally low, and eosinophils were abnormally high. AR 331-32. Concerned about a possible malignancy, emergency personnel referred Plaintiff to an ear, nose, and throat specialist for a biopsy. AR 325; 341.

On July 23, 2012, Douglas Tait, M.D., conducted a CT-guided biopsy of the mass on Plaintiff's neck. The biopsy indicated follicular lymphoma graded 1-2 on a scale of 3.[4]

On August 29, 2012, Plaintiff's treating physician, oncologist Robert L. Levy, M.D., noted that Plaintiff continued to experience occasional nausea, vomiting, loose bowels, sweats, and fever. AR 497-98. Dr. Levy discussed prognosis and treatment with Plaintiff, and advised Plaintiff that he would continue to be monitored for progression of the lymphoma. AR 499-500. Although Plaintiff could have experienced a single, acute incident, Dr. Levy explained, follicular lymphoma was hard to cure but generally responsive to chemotherapy if it progressed. AR 499-500.

On September 18, 2012, radiologist Michael Zeppa, M.D., performed a PET/CT scan from Petitioner's skull base to mid-thigh. AR 379-80. The study identified "an approximately 5 x 6 cm intensely hypermetabolic mass in the low left neck consistent with active lymphoma." AR 380. In the abdomen and pelvis, the study identified "shotty multifocal retroperitoneal, mesenteric, and retrocrural lymph nodes most of which are not appreciably hypermetabolic, however at least one lymph node is mildly hypermetabolic in the central mesentery and is concerning for active lymphoma." AR 380.

The record includes monthly metabolic lab reports from September 2012 through September 2013, each of which reports the reduced blood platelet counts indicative of thrombocytopenia. AR 422-447.

In his October 4, 2012, notes, Dr. Levy indicated that Plaintiff was then doing well, with no fever, sweats, bleeding, bruising, bone pain, or recurrent infection, although he continued to

---

[4] The report noted that the grading was based on the area of the biopsy. The report did not "exclude the possibility of a higher grade process in an unsampled area." AR 414.

experience gastro-intestinal difficulties. AR 493. Although Plaintiff continued to do well on October 10, 2012, his platelet count was 51,000. AR 490. Dr. Levy opined that a platelet count over 50,000 presented little risk of severe spontaneous bleeding, but that a drop below 20,000 would present a problem. AR 491.

A bone marrow aspiration biopsy performed on October 26, 2012, revealed no signs of lymphoma in the marrow.[5] AR 384-85; 388. A flow cytometry report dated October 28, 2012, indicated no immunophenotypic evidence for non-Hodgkins lymphoma. AR 386.

On December 17, 2012, agency physician W. Jackson prepared a disability determination explanation based on documents submitted to the agency.[6] AR 81. Dr. Jackson found that Plaintiff had a medically determinable impairment (low grade follicular lymphoma) and was to begin chemotherapy.[7] He deemed Plaintiff's representation of his symptoms to be "partially credible," and noted that Plaintiff had experienced "no severe problems with his function due to [left neck lymphoma]." AR 82. Plaintiff continued to exercise and had not experienced pain, fevers, or sweats. AR 82. Accordingly, Dr. Jackson opined that Plaintiff had the residual functional capacity to lift and carry 25 pounds frequently and 50 pounds occasionally; sit, stand, and walk for six hours in an eight-hour workday; and push or pull without limits. AR 83. Plaintiff had no postural, manipulative, visual, communicative, or environmental restrictions. AR 83. Dr. Jackson concluded that Plaintiff could continue to work as a truck driver despite his limitations. AR 84.

On January 30, 2013, Dr. Levy noted that Plaintiff, who had been doing "so-so," was experiencing more symptoms, including fatigue, nausea, vomiting, fever, and night sweats. AR 481. Dr. Levy opined that although Plaintiff was "not doing too badly symptomatically presently," "[t]here is a question of progression of the lymphoma," and "it is difficult to say for sure what his prognosis or treatment will be." AR 483.

---

[5] Plaintiff's physicians conducted the bone marrow biopsy to rule out the possibility that Plaintiff's thrombocytopenia resulted from a malignancy in Plaintiff's bone marrow.

[6] The agency determined that a consultative examination of Plaintiff was not required.

[7] Plaintiff was not treated with chemotherapy at that time.

On February 20, and March 20, 2013, Dr. Levy noted that Plaintiff was experiencing intermittent weakness and nausea. AR 472, 476. In March, swelling of the node on Plaintiff's neck caused discomfort. AR 472.

Following an April 4, 2013, consultation, radiation oncologist Peter Sien, M.D., opined that Plaintiff was a candidate for radiation therapy to reduce the mass on his neck. AR 412. Accordingly, from April 16 through 30, 2013, doctors at Frigge Radiation Oncology Center administered low dose radiation therapy to Plaintiff's neck mass. On May 20, 2013, Dr. Sien reported that the mass was completely gone, and radiation therapy was complete. AR 409. On June 20, 2013, radiation oncologist Michael Lock, M.D., reported that Plaintiff "is feeling well with excellent stamina and energy. He reports no symptoms of fever or weight loss." AR 408. Dr. Lock opined that Plaintiff appeared "very healthy" and that the radiation therapy was "a complete success." AR 408.

On April 25, 2013, Dr. Levy noted that following two weeks of radiation therapy, the neck mass had shrunken, enabling Plaintiff to breathe more easily. AR 467. But because Plaintiff's platelet counts had decreased, Dr. Levy advised him to watch for excess bleeding or bruising. AR 468. The doctor also ordered weekly blood counts. AR 468.

At his June 20, 2013, follow-up appointment, Plaintiff reported nose bleeds occurring in conjunction with sneezing and runny nose, which lasted as long as two hours. AR 463. Plaintiff had continued to experience fatigue. AR 464.

On August 2, 2013, Dr. Levy noted that Plaintiff was doing well, despite having nausea and occasional vomiting and "a little cough." AR 461.[8] Plaintiff experienced nosebleeds and fatigue but was exercising "a couple of times a week." AR 463.

On September 5, 2013, Dr. Levy noted that Plaintiff "has not been doing too well." AR 457.[9] Plaintiff felt hot and clammy after eating, experienced low back pain, and felt tired and sleepy. AR 457. He had developed a bump on his right index finger. AR 457.

---

[8] The Administrative Record omits the second page of the report.
[9] The Administrative Record omits the second page of the report.

6

On September 13, 2013, agency medical consultant Sadda V. Reddy, M.D., noted that if Plaintiff's lymphoma were residual or recurrent, his condition would satisfy Listing 13.05. AR 106.

On September 19, 2013, Dr. Levy noted that Plaintiff's lymphoma was not them "acutely progressive," but that the thrombocytopenia "may have to be treated if it drops a lot more." AR 451. Plaintiff "feels bad and tired and just cannot do much." AR 449. Active problems included "malig[nant] lymphomas intra-abdominal lymph nodes," and nose bleeds. AR 452.

On October 8, 2013, Dr. Reddy completed a disability determination explanation at the reconsideration level. AR 97-114. According to Dr. Reddy, since Dr. Jackson's initial report, there had been no change in Plaintiff's illness, injury, or condition, or physical or mental limitations, and Plaintiff had no new illnesses or conditions. AR 98. Following a review of additional medical reports, Dr. Reddy concluded, "[Claimant] is doing well and lymphoma is gone. Affirm initial decision of [medical residual functional capacity]." AR 105. Dr. Reddy also agreed to affirm the prior residual functional capacity assessment of medium, although she added hazard precautions, since falls from unprotected heights or accidents involving hazardous machinery could be catastrophic to an individual with thrombocytopenia. AR 106; 110.

On April 1, 2014, Plaintiff reported nose bleeds on exertion. AR 526.

Evaluating an April 28, 2014, PET/CT scan, radiologist Nha Tran, M.D., noted:

> Slight interval increase in size of multiple mildly enlarged hypermetabolic lymph nodes in the left axilla. New hypermetabolic lymphadenopathy at the mid mesenteric root with surrounding hazy stranding. Overall findings are concerning for recurrence of lymphoma.

AR 534.

When Plaintiff saw Dr. Levy on May 6, 2014, he was not feeling well, and reported dizziness, shortness of breath, fatigue, and nosebleeds that lasted a few minutes. AR 524. The PET/CT scan showed increased adenopathy in the left axillary region and lower abdomen. AR 524. Dr. Levy noted some mild progression [of lymphoma], but no acute indication [for] starting chemotherapy or Rituxan." AR 525. Dr. Levy and Plaintiff "[d]iscussed the use of Rituxan

alone for treatment of low-grade lymphoma to try to put them in [re]mission, but it is not clear the

benefits and how worse the risks and side effects presently." [*sic.*] AR 525.

On May 19, 2014, Dr. Levy opined:

> [Plaintiff] has non-Hodgkin's lymphoma. He has extensive involvement, but he is only needing treatment for radiation therapy in the neck area so far. He continues to have chronic stable thrombocytepenia and fatigue. He does have generalized weakness, has trouble doing as much as he used to do. However, he is not presently on chemotherapy or radiation therapy.

AR 510.

On June 17, 2014, Plaintiff was experiencing occasional dizziness and loose bowels. AR

522. On July 24, 2014, Dr. Levy noted Plaintiff's continued fatigue. AR 519. The PET/CT scan

showed slight progression of lymphoma. AR 520.

At the August 25, 2014, follow-up appointment, Plaintiff reported nausea, vomiting, loose

bowels, and several slight nosebleeds. AR 517. His platelet count was down to 34,000. AR 517.

Dr. Levy assessed Plaintiff has having "somewhat worsened thrombocytopenia," a possible recent

viral illness, a history of low-grade lymphoma status post radiation therapy, and history of

fatigue. AR 517.

Radiologist Michael Tekautz, M.D., reported that the September 8, 2014, PET/CT scan

indicated: (1) the mild hypermetabolic left axillary lymphadenopathy observed previously had

improved, but a residual remained; (2) the solitary hypermetabolic mesenteric node observed

previously had improved, with a remaining low level residual; (3) another mesenteric node

showed a mild increase in size and activity; and (4) "there may be 1 or 2 small mildly

hypermetabolic new nodes." AR 531. Dr. Tekautz opined, "The findings remain worrisome for

lymphoma." AR 531.

On November 13, 2014, Plaintiff's platelet count was 57,000. AR 514. Dr. Levy

considered both Plaintiff's lymphoma and thrombocytopenia were clinically stable. AR 515.

On December 11, 2014, Dr. Levy noted that Plaintiff was doing "so-so," and continued to

experience nausea and loose bowels. AR 513. His platelet count was down to 49,000. AR 513.

8

### 3.  Evidence Submitted to the Appeals Council[10]

An April 3, 2015, PET/CT scan revealed no evidence of active lymphoma in the chest or pelvis.  AR 542.  There were, however, a three-centimeter hypermetabolic mesenteric nodal mass consistent with active lymphoma, and two adjacent satellite nodules that were also PET positive, consistent with active disease.  AR 542.

On April 10, 2015, Isaac Faraji, M.D., conducted an upper gastro intestinal endoscopy and found a normal duodenum, cardia, and gastric fundis; patchy inflammation of the gastric antrim, characterized by congestion, edema, and friability; and "LA grade A" esophagitis with no bleeding in the lower third of the esophagus.  AR 539.  On the same date, Dr. Faraji performed a colonoscopy, which revealed a normal colon and normal terminal ilium.  AR 537.  In the course of both procedures, Dr. Faraji secured multiple biopsies for histology.  AR 537; 583.  The record does not include results of these biopsies.

### III.  The Disability Standard

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment of impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§

---

[10] On December 3, 2015, the Appeals Council ordered medical records identified as Exhibit 16F (AR 536-47) incorporated into the administrative record.  AR 15.  The Administrative Council did not comment on these records in their decisions denying review.

9

404.1520(a)-(f); 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 404.1527; 404.1529; 416.927; 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

### IV.     Summary of the ALJ's Decision and the Issues Presented

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 24-33.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 2, 2012 (the alleged onset date), through April 28, 2015 (the date of the decision).  AR 24; 26; 33.  Plaintiff's severe impairments included (1) a history of low-grade non-Hodgkin's lymphoma, status-post radiation therapy and (2) chronic stable thrombocytopenia.  AR 26.  The severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526; 416.920(d); 416.925; and 416.926).  AR 26.  The ALJ concluded that:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except he could occasionally climb ladders, ropes, or scaffolds and frequently balance.  He must avoid frequent exposure to workplace hazards such as fast moving or unprotected machinery and

///

unprotected heights.  He must avoid concentrated exposure to extreme heat and uneven or slippery terrain.
AR 27.

At step five, the ALJ relied on the testimony of a vocational expert to find that Plaintiff was capable of performing his past employment as a truck driver, crane operator, and heavy equipment operator, as generally performed in the economy according to the Dictionary of Occupational Titles ("DOT").  AR 31.  In the alternative, Plaintiff could perform other jobs available in the national economy, such as palletizer, DOT No. 929.687-054, SVP 2, light with 232,684 positions nationally; garment sorter, DOT No. 222.687-014, SVP 2, light with 234,569 positions nationally; and package operator, automatic, DOT No. 920.685-082, SVP 2, light with 173,027 positions nationally.  AR 32-33.  Accordingly, the ALJ found that Plaintiff was not disabled.  AR 33.

Proceeding *pro* se, Plaintiff challenges the agency's decision contending that it was neither (1) supported by substantial evidence, nor (2) consistent with Plaintiff's true medical condition.  Doc. 32 at 3-4.  For the first time on appeal, Plaintiff seeks to submit a letter prepared by Dr. Levy to support his contentions.  Doc. 32 at 6. The Commissioner disagrees, contending Plaintiff failed (1) to establish due cause for consideration of Dr. Levy's letter  and (2) to prove reversible error in the ALJ's analysis of the medical evidence.  Doc. 33 at 11-17.

**V.    Standard of Review**

Under 42 U.S.C. §405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).  "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence

which, considering the record as a whole, a reasonable person might accept as adequate to support

a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation,

one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## VI. Admissibility of Evidence Submitted After the Agency Hearing

### A. Introduction

Petitioner seeks to have this Court consider evidence generated or introduced after

issuance of the hearing decision. His brief explicitly designates only a single item: an undated

letter provided by his former treating physician that was first produced to the district court as part

of Plaintiff's appeal. In addition, however, Petitioner argues generally that the hearing decision

was not supported by substantial evidence in that it failed to consider evidence of the worsening

of his lymphoma and thrombocytopenia.

### B. Dr. Levy's Letter

For the first time in this appeal, Plaintiff submits an undated letter signed by Dr. Levy,

addressed "To whom it may concern," and stating:

> In regards to Rick Colmenero, who was a patient of mine. His wife
> came in to discuss his situation, patient discontinued care here back
> in April of 2015 and began to follow up in Turlock with Dr. Eldaly,
> where patient immediately started chemotherapy treatment for six
> months. Patient Rick Colmenero, while under my care patient had
> persistent symptoms including nose bleeds, weakness, nausea, and
> dizziness. Patient was unable to continue work at the time when he
> was under my care. Due to the lymphoma diagnosis patient was
> treated with radiation on a large lymph node in his neck. It is my
> understanding patient continues care with oncologist Dr. Eldaly on
> a monthly bas[i]s and is still healing from chemotherapy.

Doc. 32 at 5.

#### 1. Requirements for a Sentence Six Remand

When deciding whether to review an ALJ's decision, Social Security regulations require

the Appeals Council to consider any additional evidence submitted by a claimant which "is new,

material, and relates to the period on or before the date of the [ALJ's] decision . . . . " 20 C.F.R. §§ 404.970(a)(5), (c), 416.1470(b); *Brewes v. Comm'r of Soc. Security Admin.*, 682 F.3d 1157, 1162 (9ᵗʰ Cir. 2012) (citation and footnote omitted). When the Appeals Council is required to consider such additional; evidence, the evidence "becomes part of the administrative record" that a district court must consider when determining whether substantial evidence supports the Commissioner's denial of Social Security benefits. *Brewes*, 682 F.3d at 1162-63.

When a claimant submits additional evidence related to a time period *after* the ALJ's decision was issued, the Appeals Council is not required to "accept" or "consider" that evidence in deciding whether to grant review. *See* 20 C.F.R. §§ 404.970(a)(5) & (c); *cf. Brewes*, 682 F.3d at 1162 (Appeals Council required to consider new and material evidence in determining whether to grant review of the ALJ's decision only if "the evidence relates to the period on or before the ALJ's decision[]") (citation and footnote omitted). In such cases, the evidence does not become part of the record that the district court must, as a matter of law, consider on appeal. *Cf.*, *e.g.*, *Whitten v. Colvin*, 642 Fed.Appx. 710, 713 (9ᵗʰ Cir. 2016) (Commissioner properly did not include in the administrative record evidence submitted to the Appeals Council which post-dated the ALJ's decision). A Sentence Six remand is appropriate "only upon a showing that is new evidence which is material and that there is good cause for the failure to incorporate such there evidence into the record." 42 U.S.C. § 405(g). *See also Mayes v. Massanari*, 276 F.3d 453, 462 (9ᵗʰ Cir. 2001) (citing *Ward v. Schweiker*, 686 F.2d 762, 764 (9ᵗʰ Cir. 1982); *Booz v. Sec'y of Health and Hum. Serv.*, 734 F.2d 1378, 1380-81 (9ᵗʰ Cir. 1984)). If the claimant's proffered evidence could not have been presented at the time of the administrative hearing, there is "good cause" for a Sentence Six remand. *Embrey v. Bowen*, 849 F.2d 418, 423 (9ᵗʰ Cir. 1988).

## 2. **Materiality**

"To meet the materiality requirement, the new evidence must bear directly and substantially on the matter in dispute." *Burton v. Heckler*, 724 F.2d 1415, 1417 (9ᵗʰ Cir. 1984). Material evidence must also present a "reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *Mayes*, 276 F.3d at 462. New evidence is

material if it is probative to the claimant's condition "at or before the time of the disability hearing." *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 511 (9th Cir. 1987).

In *Sanchez*, the agency found that the claimant was not disabled by a back disorder and issued a decision denying benefits. 812 F.2d at 511. Thereafter, the claimant filed a new application for benefits alleging that he was disabled by an organic brain disorder that resulted in memory loss and speech problems. *Id.* In his district court appeal of the earlier denial, the claimant sought to introduce as new evidence two psychological evaluations prepared for the subsequent application that supported a finding of an organic brain disorder. *Id.* The Ninth Circuit Court held that because the psychological evaluations were not probative to the question of whether the claimant was disabled by a back condition, they were not material to the claimant's condition at the time of the earlier hearing. *Id.* at 512.

The Ninth Circuit contrasted Sanchez's situation with that of the claimant in *Burton*, a case on which Sanchez relied:

> In *Burton*, the claimant Burton's psychological condition was an issue before the administrative law judge (ALJ). The new evidence showed deterioration in Burton's mental condition due to long-term alcohol addiction. The ALJ had considered Burton's alcoholism at the hearing. The court held that Burton's psychological condition linked to alcoholism was "squarely before" the Secretary, and thus the evidence of later mental deterioration was probative of Burton's condition at the hearing. By contrast, Sanchez's mental condition was not significantly at issue at the hearing. He reported some loss of concentration, depression and anxiety as a result of his back condition. Sanchez's complaints do not suggest he suffered from a disabling mental impairment at the time of the hearing such as that caused by the long-term alcoholism in *Burton*. The new evidence indicates, at most, mental deterioration after the hearing, which would be material to a new application, but not probative of his condition at the hearing.
>
> *Id.* at 511.

*See also Embrey*, 849 F.2d at 423 (finding a physician's 1987 update of his 1985 medical opinion to be material).

The probative value of Dr. Levy's letter is marginal. The statements of Plaintiff's symptoms and his inability to work are cumulative of Dr. Levy's treatment records, which were

part of the record at the time of the hearing decision. To the extent that Dr. Levy reports his understanding that Plaintiff is receiving chemotherapy from another physician, submitting treatment records and opinions from Dr. Eldaly himself would have been more powerful evidence. Nonetheless, despite its relatively weak probative value, Dr. Levy's report of Petitioner's subsequent treatment is material because it relates directly to the progression of the lymphoma, which was at issue in the April 2015 hearing decision.

### 3. <u>Good Cause</u>

To implicate a sentence six remand, the new evidence must also satisfy the statute's good cause prong. A claimant cannot satisfy the good cause requirement simply by securing additional favorable evidence after the Commissioner has denied his claim. *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990); *Allen v. Sec'y of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984). The claimant must establish good cause for not producing the evidence at or before the disability hearing. *Id.*; *Sanchez*, 812 F.2d at 511. *Cf. Ward*, 686 F.2d at 762 (admitting new evidence where the symptoms of which the claimant complained were not diagnosed as myasthenia gravis until after the Commissioner had denied her application for benefits).

Good cause does not exist for Dr. Levy's letter. When a claimant can "offer no reason why he had not solicited the information from [the doctor] earlier," the obvious explanation is that when [the claimant] failed to succeed in his disability claim ... he sought out a new expert witness who might better support his position." *Clem*, 894 F.2d at 332, quoting *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985), and *Allen*, 726 F.2d at 1473. Although Dr. Levy is not a new witness, the letter itself indicates that Plaintiff's wife sought the letter in an attempt to secure new evidence to support a reversal of the agency's denial of benefits. When a claimant cannot establish good cause for his failure to introduce the evidence in the case before the administrative

///

hearing, the proper procedure is to reapply for benefits, using the new evidence to prove the development of a disabling physical or mental impairment. *Sanchez*, 812 F.2d at 512.

### 4. Summary

Dr. Levy's letter does not satisfy the requirements to be new evidence requiring a sentence six remand.

### C. New Medical Reports

#### 1. Evidence Submitted to Appeals Council

Dr. Levy's letter is not the only evidence submitted following the agency hearing. On November 23, 2015, during the pendency of the agency appeal, Plaintiff's attorney provided to the Appeals Council (1) new PET/CT scan results and (2) a report of an endoscopy and colonoscopy and requested expedited handling in view of the severity of Plaintiff's illness and his great financial need. AR 17. Although the Appeals Council declined to review the ALJ's decision, it ordered the evidence be made part of the record. AR 5-8; AR 10-14; AR 15-16. Neither of the Council's denials of review addressed the substance of these supplemental medical records.

The new evidence consisted of two medical reports. The first, an April 3, 2015, PET/CT scan found no evidence of active lymphoma in Plaintiff's chest or pelvis. AR 542.[11] In his abdomen, however, the scan revealed a new three-centimeter hypermetabolic mesenteric nodal mass consistent with active lymphoma, and two adjacent satellite nodules that were also PET positive, consistent with active disease. AR 542. Shotty lymph nodes in the inguinal area were unchanged since the prior scan. AR 542.

According to the second report, on April 10, 2015, Isaac Faraji, M.D. conducted a upper gastrointestinal endoscopy , finding a normal duodenum, cardia, and gastric fundis; patchy mild inflammation of the gastric antrim, characterized by congestion, edema, and friability; and LA

---

[11] The pages of the April 3, 2015, report are transposed in the record so that the report begins at AR 542 and concludes on AR 541.

16

grade A esophagitis with no bleeding in the lower third of the esophagus.  AR 539.  At the same

time, Dr. Faraji performed a colonoscopy, which revealed a normal colon and normal terminal

ilium.  AR 537.  In the course of both procedures, Dr. Faraji secured multiple biopsies for

histology.  AR 537; 583.  The record does not include the biopsy results.

### 2.      Review of Evidence Submitted to Appeals Council

When "new and material evidence is submitted" to the Appeals Council relating "to the

period on or before the date of the ALJ's hearing decision," the Appeals Council must consider

the new evidence in determining whether to grant review.  20 C.F.R. §§ 404.970(b), 416.1470(b).

Under the regulations, the Appeals Council may review a case for a number of reasons, including

if 'the Appeals Council receives additional evidence that is new, material, and relates to the

period on or before the date of the hearing decision, and there is a reasonable probability that the

additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5); *see*

*also* 20 C.F.R. § 416.1470(a)(5); *Brewes*, 682 F.3d at 1162.  "[W]hen a claimant submits evidence

for the first time to the Appeals Council, which considers that evidence in denying review of the

ALJ's decision, the new evidence is part of the administrative record, which the district court

must consider in determining whether the Commissioner's decision is supported by substantial

evidence."  *Brewes*, 682 F.3d at 1159-60.  A claimant need not show good cause before

submitting new evidence to the Appeals Council.  *Id.* at 1162.

New evidence is material if it bears "directly and substantially on the matter in dispute."

*Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010) (quoting *Booz*, 734 F.2d at 1380 (internal

punctuation omitted).   Under the regulations, the Appeals Council will grant review when it

finds, after considering the record as a whole, including the new evidence, that the ALJ's "action,

finding, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. §§

404.970(b), 416.1470(b).  There can be little question that the new evidence submitted to the

Appeals Council related directly and substantially to a matter in dispute, that is, whether

Plaintiff's lymphoma was recurrent or progressive.

///

## a. PET/CT Scan Report

Determining the materiality of the April 2015 PET/CT scan results is easier when they are viewed in light of Plaintiff's disease progression. Although the ALJ acknowledged subsequent medical reports that showed continued residual and recurrent lymphoma masses, her assessment of Plaintiff's disability relied primarily on the eighteen-month-old report of an agency physician, Dr. Reddy. *See* AR 29-31.

According to Dr. Reddy, if Plaintiff's lymphoma were residual or recurrent, his condition would satisfy Listing 13.05. AR 106. In an August 29, 2013, note, the doctor agreed to affirm the agency's denial of benefits, citing Dr. Levy's August 2, 2013, treatment note (AR 462) as indicating that "Non-Hodgkin's lymphoma completely resolved with radiation therapy," and concluding, "PET scan showed that the disease is localized and no other evidence of disease elsewhere." AR 105-06. Dr. Reddy noted that he had been unable to make contact with Dr. Levy concerning treatment notes indicating continued presence of low-grade lymphoma. AR 106.

On September 13, 2013, Dr. Reddy again noted his inability to reach Dr. Levy and sought more recent treatment notes in an attempt to resolve the uncertainty about Plaintiff's then-current condition. AR 106. Dr. Reddy noted:

> Unless we know whether this is residual or recurrent lymphoma, we cannot say whether he meets Listing 13.05 or not. Since he has stated that this is a low grade lymphoma likely [*sic*] would not meet any listing.

AR 106.

On October 7, 2013, Dr. Reddy noted that Dr. Levy's follow-up notes indicated no recurrence of lymphoma. AR 106. After Dr. Reddy was again unsuccessful in his attempt to telephone Dr. Levy on October 8, 2013, the doctor concluded that Plaintiff had no evidence or residual or progressive lymphoma. AR 106.

In the approximately eighteen months elapsing between Dr. Reddy's opinion and the March 12, 2015, agency hearing, Dr. Levy continued monitoring Plaintiff's condition. An April

8, 2014, PET/CT scan revealed that hypermetabolic lymph nodes in Plaintiff's underarm continue to grow larger and that a new hypermetabolic lymphadenopathy appeared at the mid mesenteric root. AR 534. The radiologist expressed concern for recurrence of lymphoma. AR 534.

Dr. Levy characterized the findings as "mild progression." AR 525. Although the doctor opined that Plaintiff's condition did not mandate initiation of chemotherapy or Rituxan, he offered Plaintiff the option of trying Rituxan in an attempt to force the lymphoma into remission. AR 525. Following a discussion of the benefits and risks of Rituxan therapy, Plaintiff declined using Rituxan at that time. AR 525.

On May 19, 2014, Dr. Levy opined:

> [Plaintiff] has non-Hodgkin's lymphoma. He has extensive involvement, but he is only needing treatment for radiation therapy in the neck area so far. He continues to have chronic stable thrombocytepenia and fatigue. He does have generalized weakness, has trouble doing as much as he used to do. However, he is not presently on chemotherapy or radiation therapy.

AR 510.

The September 8, 2014, PET/CT scan indicated: (1) the mild hypermetabolic left axillary lymphadenopathy observed previously had improved, but a residual remained; (2) the solitary hypermetabolic mesenteric node observed previously had improved, with a remaining low level residual; (3) another mesenteric node showed a mild increase in size and activity; and (4) "there may be 1 or 2 small mildly hypermetabolic new nodes." AR 531. Radiologist Michael Tekautz, M.D., opined, "The findings remain worrisome for lymphoma." AR 531.

Although the corresponding PET/CT scan is apparently not in the record, Plaintiff testified that physicians had identified three new masses located in his underarm and abdomen just prior to the hearing. AR 52. According to Plaintiff, he was to undergo treatment if those masses continued to grow. AR 52. The subsequent medical report submitted to the Appeals Council documented improvement of the underarm masses but also revealed the development of additional masses indicative of recurrent or progressive lymphoma.

///

19

Additional evidence submitted to the Appeals Council becomes part of the administrative record, and the District Court must consider that evidence in determining whether the ALJ's decision was supported by substantial evidence. *Brewes*, 682 F.3d at 1159-60. The District Court must remand if new material evidence gives rise to a reasonable possibility that the new evidence might change to outcome of the agency determination. *Booz*, 734 F.2d at 1380-81. *See, e.g., Brewes*, 682 F.3d at 1163-64 (in light of vocational expert's testimony, post-decision psychologists' opinions submitted to the Appeals Council indicating a likelihood that the claimant would miss several days of work monthly were material and had the capacity to change the outcome of the hearing decision); *Warner v. Astrue*, 859 F.Supp.2d 1107, 1116-17 (C.D.Cal. 2012) (treatment records documenting the claimant's (1) worsening depression and anxiety and (2) hospitalization following a suicide attempt suggested a substantial likelihood that the ALJ's consideration of the new evidence would materially alter the ALJ's disability analysis); *Beltz v. Berryhill*, 679 Fed.Appx. 576, 577 (9th Cir. 2017) (remand to allow ALJ to consider new evidence that illuminated question of the nature, extent, and persistence of the claimant's disability); *Lay v. Astrue*, 373 Fed.Appx. 804, 806 (9th Cir. 2010) (when the Appeals Council did not address additional evidence of impairments not considered by the ALJ and that evidence had the potential to change the outcome of the disability analysis, remand for further consideration was ordered).

When a claimant's condition is deteriorating, the most recent evidence is most probative. *Stone v. Hecker*, 761 F.2d 530, 532 (9th Cir. 1985). The evidence of Plaintiff's lymphoma illustrates this proposition well. Although Dr. Reddy stated that recurrent or residual lymphoma would satisfy Listing 14.03, in the absence of definitive reports and unable to contact Dr. Levy by phone, his October 2013 opinion assumed that Plaintiff's lymphoma was "gone." AR 105.The PET/CT report submitted to the Appeals Council directly contradicts Dr. Reddy's assumption, dramatically illustrating why early medical evaluations cannot constitute substantial evidence to rebut conclusions set forth in later reports. *Id.*

In light of the deteriorating nature of Plaintiff's illness and Dr. Reddy's position that recurrent or progressive lymphoma would establish disability under Listing 14.03, the results of

the April 3, 2015, PET/CT scan give rise to a reasonable possibility that the new evidence might change to outcome of the agency determination.  Therefore, the Court will remand this case and direct the Commissioner to develop more fully the state of Plaintiff's lymphoma on March 12, 2015, the agency hearing date.

### b.      Colonoscopy and Endoscopy Reports

In themselves, the reports of the endoscopy and colonoscopy less clearly mandate remand concerning Plaintiff's condition on the agency hearing date.  Although the reports indicate that surgeons harvested questionable tissue for biopsy in the course of these procedures, Plaintiff did not provide the results of the histological analysis of those biopsies to the Appeals Council or the Court.  Nonetheless, the medical evidence of record establishes that Plaintiff experienced debilitating nausea, vomiting and diarrhea at the same time he was experiencing both lymphoma and thrombocytopenia.  As part of the remand, the Court will direct the Commissioner to develop fully all evidence relating to the state of Plaintiff's chronic digestive illness on the agency hearing date and if relevant, to include that evidence in its analysis of steps three through five.

### VII.     Conclusion and Order

It is hereby ordered that this case be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further development of the record and additional findings regarding whether Plaintiff satisfied the requirements of Listing 13.05 or otherwise proved entitlement to disability insurance benefits or supplemental security income as of March 12, 2015, the date of the agency hearing.

The Clerk of Court is directed to enter judgment in favor of Plaintiff, Ricky Colmenero, and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **August 3, 2018**            **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE